UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                   )
CARMEN LLERENA DIAZ,               )
                                   )
              Plaintiff,           )
         v.                        )     CIVIL ACTION
                                   )     No. 08-10143-WGY
JITEN HOTEL MANAGEMENT, INC.,      )
                                   )
              Defendant.           )
_____)
```

MEMORANDUM AND ORDER

YOUNG, D.J.                                    November 8, 2011

## I.   INTRODUCTION

The plaintiff, Carmen Llerena Diaz ("Diaz") filed this age discrimination action against Jiten Hotel Management, Inc. ("Jiten") in January 2008.  Since then, the case has seen more than three years of vigorous litigation by both sides.  On April 4, 2011, at the end of a five-day trial, the jury awarded Diaz $7,650 in compensatory damages on her claim under Massachusetts General Laws, chapter 151B, section 9.  She now moves for attorney's fees and costs.

## II.  ANALYSIS

To award attorney's fees, this Court must first determine if the fees are warranted, and, if they are, the Court must determine the amount of fees appropriate.  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

A.   **Entitlement to Attorneys' Fees**

Diaz moves for attorney's fees under Massachusetts General Laws, chapter 151B, section 9, which states in relevant part: "If the court finds for the [plaintiff] it shall, in addition to any other relief and irrespective of the amount in controversy, award the [plaintiff] reasonable attorney's fees and costs unless special circumstances would render such an award unjust."  The courts of the Commonwealth of Massachusetts have interpreted similar language in other attorney's fees statutes to require a mandatory award of fees to a prevailing plaintiff.  See Killeen v. Westban Hotel Venture, LP., 69 Mass. App. Ct. 784, 790 (2007) (interpreting statute stating that fees "shall be awarded" to be mandatory).  Because Diaz was awarded damages, she is a prevailing party and is entitled to recover reasonable attorney's fees and costs.  See Farrar v. Hobby, 506 U.S. 103, 113 (1992).

Jiten argues that such an award in this case would be unjust and ought not be made.  See Def.'s Opp'n Pl.'s Mot. Att'y's Fees and Costs 6-9, ECF No. 135 ("Def.'s Opp'n").  Under First Circuit precedent addressing the Civil Rights Attorney's Fees Award Act, 42 U.S.C. § 1988, "special circumstances" can render a fee award unjust.  See De Jesus Nazario v. Morris Rodriguez, 554 F.3d 196, 200 (1st Cir. 2009).  Specifically, Jiten asserts that Diaz ought not receive attorney's fees because she gave false testimony at trial and because her requested fees are disproportionate to the

relief she obtained.

The Court is not persuaded by either of Jiten's arguments. First, the alleged false testimony by Diaz was more a matter of possible embellishment at trial rather than outright fabrication. For example, Diaz testified at trial that after a certain age-related comment, she was "feeling in more pain, humiliated." Def.'s Opp'n 9 (citing Trial Tr. vol. 2, 42, March 22, 2011, ECF No. 127).  Jiten contrasts this with Diaz's deposition testimony that she was "a little bit upset" after that same incident.  <u>Id.</u> (citing Diaz Dep. vol. 1, 68, Jan. 12, 2009, ECF No. 135-9). According to Jiten, "Diaz lied and intentionally altered her answers to garner as much sympathy from the jury as possible." <u>Id.</u>  This type of changed testimony, in the Court's view, does not warrant a wholesale denial of attorney's fees.  Jiten had ample opportunity to cross-examine Diaz at trial, and did so quite extensively.  Trial Tr. vol. 2, 81-100.  Moreover, the jury ultimately found in favor of Diaz, implying that they credited her testimony to at least a significant degree.  This Court will not now second guess the jury's credibility determination and rule that any embellishments by Diaz were so severe as to render the attorney's fee award unjust and warrant the denial of the fees.

Second, Jiten offers no legal support for its assertion that the amount requested by Diaz ought lead to denying all attorney's

fees.  The argument that Diaz's requested fees are unreasonable will be addressed below, where the Court determines the appropriate amount of the reward.

Because no special circumstances exist that would render the award of attorney's fees to Diaz unjust, this Court rules that Diaz is entitled to recover reasonable attorney's fees and the costs of the litigation, as mandated by Massachusetts General Laws, chapter 151B, section 9.

**B.   Calculation of Attorney's Fees**

    **1.   Lodestar Calculation**

The lodestar approach is the proper method to calculate attorney's fees.  <u>Marrotta</u> v. <u>Suffolk Cnty.</u>, 726 F. Supp. 2d 1, 4 (D. Mass. 2010).  To calculate the appropriate fee amount, this Court must determine "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  <u>Gay Officers Action League</u> v. <u>Puerto Rico</u>, 247 F.3d 288, 295 (1st Cir. 2001) (quoting <u>Hensley</u>, 461 U.S. at 433) (internal quotation marks omitted).  The party seeking an award of attorney's fees bears the burden of establishing and documenting the hours expended and the hourly rates charged.  <u>Torres-Rivera</u> v. <u>O'Neill-Cancel</u>, 524 F.3d 331, 340 (1st Cir. 2008).

    **a.   Reasonable Hours Expended**

Diaz bears the burden of proving reasonable attorney's fees and with this burden comes an obligation to provide an accurate

representation of the hours worked.  See Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 952 (1st Cir. 1984).  A contemporaneous record of the hours worked is the best way for this Court to make an accurate calculation of the hours expended on the matter.  See id.

Diaz's Attorney, Lynn A. Leonard, submitted to the Court a contemporaneous record of the hours she worked on this case.  See Mem. Law Supp. Pl.'s Mot. Att'y's Fees and Costs, ECF No. 132-1, Ex. 1 ("Invoice I"); Pl.'s Mot. Am. Req. Att'y's Fees and Costs, ECF No. 149-1, Ex. 1 ("Invoice II").  Leonard requests reimbursement for a total of 449.55 hours worked between July 2008 and April 2011, Invoice I at 12, and 15.80 post-trial hours worked between April 2011 and June 2011.  Invoice II at 1-2.

### i.   Travel Time

As an initial matter, the Court notes that, of the hours recorded by Attorney Leonard, 32.4 were spent traveling.  If an attorney is simultaneously traveling and working on the case, the attorney may be compensated at her normal rate.  See Ryan v. Raytheon Data Sys. Co., 601 F. Supp. 243, 256 (D. Mass. 1984) (Keeton, J.).  If the attorney is merely traveling and not working on the case, however, courts in this circuit normally reduce the award for such hours by fifty percent.  See id.; see also Maceira v. Pagan, 698 F.2d 38, 40 (1st Cir. 1983); Chestnut v. Coyle, No. 99-10236, 2004 WL 438788, at *3 (D. Mass. Mar. 09,

2004) (Zobel, J.); <u>Horney</u> v. <u>Westfield Gage Co.</u>, 227 F. Supp. 2d 209, 216 (D. Mass. 2002) (Neiman, M.J.).  Here, Attorney Leonard only documented that she traveled for the purposes of this case, not that she performed any legal work while traveling.  <u>E.g.</u>, Invoice I at 3.  Accordingly, this Court will reduce the number of hours claimed for travel time by one half, resulting in a 16.20 hour reduction in compensable hours.

### ii.  State Court Appearance

Toward the end of the trial, Attorney Leonard had a scheduling conflict between the closing arguments and jury charge in this matter and an appearance she was to make in Massachusetts Superior Court.  She records 1.5 hours during which she handled this conflict by drafting a motion to continue the state court matter and appearing in state court on that motion.  <u>See</u> Invoice I at 11 (entry of March 28, 2011).  Jiten ought not be required to bear an extra burden because of Attorney Leonard's scheduling conflict, so the Court deducts this 1.50 hours from Attorney Leonard's logged hours.

### iii. Unsuccessful Claims

A Court may deduct time spent working on "unsuccessful, severable claims."  <u>Coutin</u> v. <u>Young & Rubicam P.R., Inc.</u>, 124 F.3d 331, 339 (1st Cir. 1997).  Here, Jiten argues that Diaz's requested number of hours is excessive as it includes time Attorney Leonard worked on claims that were defective as matter

6

of law and had no chance of success, including claims that Diaz
voluntarily dismissed before trial.  <u>See</u> Def.'s Opp'n 12-19.

On September 3, 2008, shortly after retaining Attorney
Leonard as counsel, Diaz filed an amended complaint asserting six
causes of action: federal age discrimination, state age
discrimination, state civil rights violations, wrongful
termination, intentional infliction of emotional distress, and
defamation.  Am. Compl. ¶¶ 29-57, ECF No. 33.

On September 2, 2009, Diaz moved voluntarily to dismiss her
claims for state civil rights violations and wrongful
termination.  ECF No. 45.  Judge Gertner allowed this motion and
dismissed those two claims.  Order, Sept. 17, 2009.  Two months
later, in November 2009, Diaz moved voluntarily to dismiss her
defamation claim.  ECF No. 52.  Judge Gertner allowed that
motion.  Order, Jan. 19, 2010.

In May 2010, Jiten filed a motion for summary judgment on
Diaz's three remaining claims: federal age discrimination, state
age discrimination, and intentional infliction of emotional
distress.  ECF No. 63.  Judge Gertner allowed the motion as to
Diaz's intentional infliction of emotional distress because that
claim was barred by the Workers' Compensation Act, which Diaz
acknowledged.  Mem. & Order 5, ECF No. 78.  The two age
discrimination claims also survived summary judgment and
proceeded to trial before this Court.  At trial, the jury found

for Diaz on the state age discrimination claim but found for
Jiten on the federal age discrimination claim.  Thus, of Diaz's
original six claims, two proceeded to trial, and she succeeded on
one of them.

Based on this procedural history, this Court will reduce
Diaz's requested attorneys' fees by two-thirds, reflecting the
four of her six claims that she either voluntarily dismissed
after realizing that they were not viable or acknowledged were
barred by statute.  Hours spent working on such untenable claims
"cannot be deemed to have been 'expended in pursuit of the
ultimate result achieved.'"  Hensley, 461 U.S. at 435 (quoting
Davis v. County of Los Angeles, No. 73-63-WPG, 1974 WL 180, at *3
(C.D. Cal. June 5, 1974)).  Ideally, the Court would be able
specifically to reduce the request by the number of hours worked
on the unviable claims.  The Invoices do not, however, provide a
level of detail to allow the Court to do so.  The Court therefore
uses the two-thirds deduction as an approximation for the number
of hours spent working on the four claims that were not viable.

The Court will not, however, accede to Jiten's request that
it also reduce the reward due to the failure of the federal age
discrimination claim at trial.  See Def.'s Opp'n 18-19.  Jiten's
argument for denying fees for this claim relies heavily on
speculation as to what the jury was thinking during deliberations
and when completing the verdict slip.  See id.  The Court

8

declines to participate in such speculation and will respect the
sanctity and privacy of the jury's reasoning.  Moreover, though
unsuccessful, the federal age discrimination claim was largely
based on the same core of facts as the successful state age
discrimination claim.  As such, the Court does not view these two
claims as severable and will not deny fees for the federal claim
even though it ultimately failed.  See System Mgmt., Inc. v.
Loiselle, 154 F. Supp. 2d 195, 209-10 (D. Mass. 2001).

### iv.  Total Compensable Hours

Based on the above considerations, the Court calculates the
total number of compensable hours as follows:

| | |
|---|---|
| Requested Hours | 449.55 |
| Post-Trial Requested Hours | 15.80 |
| Travel Deduction | -16.20 |
| State Court Deduction | -1.50 |
| **Subtotal** | **447.65** |
| Unsuccessful Claims Reduction | -298.43 |
| **Total** | **149.22** |

Thus, Diaz will receive compensation for 149.22 hours of
work done by Attorney Leonard.

### b.  Reasonable Hourly Rate

This Court must determine a reasonable hourly rate based on
the "prevailing rates in the community (taking into account the
qualifications, experience, and specialized competence of the
attorneys involved)." Gay Officers Action League, 247 F.3d at

295.  Here, Diaz requests that Attorney Leonard be compensated at a rate of $300 per hour and supports this request with affidavits from Attorney Leonard ("Aff. Attorney Leonard"), ECF No. 132-3, and Attorney Katherine J. Michon ("Aff. Attorney Michon"), an employment law partner at Shilepsky Hartley Robb Casey Michon LLP, ECF NO. 132-2.  Both attorneys state that a rate of $300 per hour is within the prevailing market rate for employment and civil rights attorneys in the Boston area.  Aff. Attorney Leonard ¶ 4; Aff. Attorney Michon ¶ 6.  Jiten does not contest the hourly rate requested.  This rate is also reasonable in light of previous awards of attorney's fees in similar cases.  See, e.g., Walsh v. Boston Univ., 661 F. Supp. 2d 91, 111-12 (D. Mass. 2009) (Stearns, J.) (approving rates ranging from $175 to $350 per hour for experienced employment discrimination law attorneys).  The Court therefore rules that Attorney Leonard will be compensated at a rate of $300 per hour for her work on this case.

### c.   Total Lodestar Amount

Given the above-determined reasonable hours expended and the reasonable hourly rate, the total lodestar amount is $44,766.

### 2.   Adjustment

Both Diaz and Jiten argue that the lodestar amount ought be adjusted due to the circumstances of this case.  Diaz, on the one hand, argues that the lodestar amount ought be increased "based on the complexity of the case, the skill and ability required and

the substantial risk involved. . . . Plaintiff's counsel faced
diligent opposing counsel who raised, and fought, every possible
legal issue in the case." Mem. L. Supp. Pl.'s Mot. Att'y's Fees
and Costs 7, ECF No. 132 ("Pl.'s Mem."). She further states that
the volume of discovery in the case warrants enhanced fees. Id.

The Court rejects Diaz's argument. Although the Court does
have authority to adjust the lodestar amount based on special
circumstances, see Hensley, 461 U.S. at 434-35, no such factors
exist in this case. In fact, all of Diaz's cited factors are
necessarily already reflected in the lodestar calculation:
Attorney Leonard spent a large amount of time on discovery due to
its large volume; the complexity of the case likely increased the
amount of time spent on legal research and drafting the
pleadings, and Jiten's contesting factual and legal issues
required Attorney Leonard to expend more time responding.
Moreover, the Court is loath to consider the fact that Jiten
"raised, and fought, every possible legal issue in the case" to
be a special circumstance when such contestation serves as the
backbone of our adversarial judicial system. Thus, the Court
will not increase the lodestar amount.

Jiten, on the other hand, argues for a reduction of the
lodestar amount based on a number of considerations. It argues
that the actual results obtained - a $7,650 judgment - are
disproportionate to a large award of attorneys' fees. Def.'s

11

Opp'n 19.  The Court declines to reduce the award of attorney's fees for this reason.  The requested amount of fees has already been substantially reduced because of Diaz's unviable claims. Moreover, civil rights claims often vindicate rights of great importance though they may not be associated with large amounts of compensable damages.  The fee-shifting provision of chapter 151B, section 9 serves a valuable function in helping to encourage representation for plaintiffs asserting such important claims.  See Irish Am. Gay, Lesbian and Bisexual Grp. of Bos. v. City of Bos., No. 921518A, 1994 WL 878945 (Mass. Super. Nov. 28, 1994) (Flannery, J.).  The jury found that Jiten discriminated against Diaz on the basis of her age.  The Court will not reduce the fee award further because that discrimination did not happen to be associated with a large sum of money.

Jiten also argues that the Court ought take account of the fact that Jiten offered, and Diaz spurned, a settlement of $75,000 before trial.  Def.'s Opp'n 17 n.48.  The Court finds this aspect of the case troubling.  Had Diaz accepted Jiten's settlement offer, she likely would have received $40,000-$50,000 depending on her exact contingency arrangement with Attorney Leonard, and Attorney Leonard would have received approximately $25,000.  Instead, Diaz will likely end up receiving less than the $7,650 judgment while Attorney Leonard stands to receive much more than she would have under the settlement.

This situation creates dangerous pressures on litigants and their lawyers.  When they are assured of receiving attorney's fees - as under Chapter 151B - lawyers have a strong financial incentive to encourage their clients to take low value claims to trial instead of settling the claims in a manner more beneficial to their clients but less lucrative for the attorneys.  Such a system has the perverse effect of discouraging the private settlement of disputes,[1] and the end result is yet more transfer of the benefits of litigation from the litigants to the lawyers. Cf., e.g., Susan P. Koniak & George M. Cohen, In Hell There Will Be Lawyers Without Clients or Law, 30 Hofstra L. Rev. 129, 145 (2001) (Class action practice is "a world in which lawyers make fabulous fees for achieving very little, if anything, on behalf of their clients.").

The Court expresses no opinion on the interactions in this case between Attorney Leonard and Diaz.  Indeed, the Court has no basis on which to form any such opinion and has absolutely no reason to question Attorney Leonard's integrity.  Nonetheless, to award a large amount of fees after a small jury verdict when a smaller amount of fees would have come from a larger settlement would seem to undermine the societal preference for private

_____

[1] In fact, in order to encourage private ordering, some statutes mandate a cap on attorney's fees when a reasonable settlement offer is rejected.  See Keeton v. Wal-Mart Stores, Inc., 21 F. Supp. 2d 653, 657-58 (E.D. Texas 1998) (discussing the Texas Deceptive Trade Practices Act).

ordering.  The Court therefore will reduce the amount of fees

Attorney Leonard will receive to $25,000, which is the amount she

would have received under a normal one-third contingency

agreement had Diaz accepted Jiten's reasonable settlement offer.

This reduction is consistent with the twelve factors the

Supreme Court has endorsed for adjusting the lodestar amount.

See Hensley, 461 U.S. at 430 n.3.

> The twelve factors are: (1) the time and labor required;
> (2) the novelty and difficulty of the questions; (3) the
> skill requisite to perform the legal service properly;
> (4) the preclusion of employment by the attorney due to
> acceptance of the case; (5) the customary fee; (6)
> whether the fee is fixed or contingent; (7) time
> limitations imposed by the client or the circumstances;
> (8) the amount involved and the results obtained; (9) the
> experience, reputation, and ability of the attorneys;
> (10) the "undesirability" of the case; (11) the nature
> and length of the professional relationship with the
> client; and (12) awards in similar cases.

Id.  The first, second, third, seventh, ninth, tenth, and

eleventh factors do not weigh in favor of any adjustment, upward

or downward.  This was an ordinary employment discrimination

case, and though it may have lasted more than three years, much

of that delay was due to requested extensions and scheduling, not

an unusual amount of litigation.  The fourth factor likewise does

not suggest for or against any adjustment. Due to the length of

this case and its large amount of downtime, it ought not have

precluded Attorney Leonard from handling other cases

simultaneously.

The remaining four factors support the Court's decision to

14

reduce the award.   Attorney Leonard and Diaz entered into a contingent fee agreement, which is customary for this type of case.   See Pl.'s Mem. 8.   Pursuant to such agreements, attorneys generally receive one-third of whatever their client ultimately receives.   Although attorney's fees awarded under fee-shifting provisions often exceed this standard contingency proportion, see, e.g., Awuah v. Coverall N. Am., Inc., No. 07-10287-WGY, 2011 WL 2356893 (D. Mass. June 15, 2011), the nature of this type of attorney-client relationship suggests that there ought be some connection between what the client receives and what the attorney receives.

Here, there were two amounts involved that might inform this connection: the settlement amount and the verdict amount. Limiting Attorney Leonard to one-third of the verdict amount would result in an unusually low fee.   Imposing a one-third limit of the offered settlement enacts a reasonable compromise on the need to compensate Attorney Leonard, encourage lawyers to represent civil rights plaintiffs, and the need to deter lawyers from discouraging settlements in order to get rich on the backs of their clients.

Lastly, this reasonable limitation of fees provides a just outcome for Jiten.   The jury found against Jiten, and this Court is respectful of that verdict.   Nevertheless, the Court views the $75,000 settlement offer as reasonable, and Jiten ought not be

punished in a manner disproportionate to the actual damages the jury assessed.  A large award of attorney's fees here would only further encourage plaintiffs and their lawyers to reject reasonable settlement offer and use the threat of a fee award to extract larger settlements from defendants.  Allowing the issue of legal fees to drive substantive justice in such a way would be to put the cart before the horse, and this Court will not further the progression toward that paradigm.

Thus, the Court, in its discretion, and taking into consideration the twelve <u>Hensley</u> factors, finds that reducing the amount of recoverable attorney's fees to $25,000 is reasonable, and that such an award best serves the interests of justice and the purposes of the fee-shifting provision of Chapter 151B, section 9.

### C.   Costs

In addition to attorney's fees, Diaz requests $13,389.34 in litigation costs.  Pl.'s Mem. 9; Pl.'s Mot. Am. Req. Att'y's Fees Costs Include Post-Trial Matters, ECF No. 149.  These requested costs include expenses such as filing fees, deposition transcripts, postage, photocopying, and service of process.  <u>See</u> Invoice I at 12-17; Invoice II at 2.  Generally, Diaz is entitled to recover these costs.  The Court, however, reduces the requested amount as follows.

First, because Diaz's amended complaint originally included

16

four non-viable claims and the Court has denied attorney's fees
for work done on these claims, see supra at Section B.1.a.iii.,
the Court also denies the costs associated with these claims.
Under a normal contingency agreement repayment of the cost is
usually contingent on the outcome of the matter.  See generally,
Laura Inglis & Kevin McCabe, The Effects of Litigation Financing
Rules on Settlement Rates, 18 Sup. Ct. Econ. Rev., 135 (2010)
(suggesting that "allowing attorneys to pay their clients'
expenses makes settlement more likely," but advancing litigation
costs ought not mean that lawyers have a financial stake in the
litigation).  Therefore, the cost of non-viable claims ought be
denied as well.

     Because the Court has no precise way to calculate these
costs, it will approximate the amount by deducting the costs of
the transcripts of the depositions of witnesses that did not
appear at trial and the cost of the interpreter associated with
that log.  These include: Bethellen Bleakney, $232.40; Marco
Castillo, $214.40; interpreter $495; James Krusky, $165.00; Ramon
Suero, $332.50; Steczynska, Rogue, and Hernandez, $462.10;
Oswaldo Lopez-Venagas, $225.00; interpreter $450; Maria Lopez,
$243.00; Samya Yamin, $138.08; Rosita Morel, Telma Ebanks, Denise
Brown, Olimpia Guzman, Betsy Ross, and Jill Solomon, $541.50; and
Fatima Baez, Zulma Vasquez, and Juanna Guerrero, 135.99.  Thus,
the Court will deduct a total of $3,634.97 for deposition

transcripts of unused witnesses.

Second, the Court will not reimburse administrative expenses such as postage, photocopying, and courier services.  Such costs are properly considered as part of the overhead associated with running a law office.  Likewise, the expenses associated with Attorney Leonard's assistant transporting files to the courthouse ought be considered part of administrative overhead.  Thus, the Court will deduct a total of $319.63 from Diaz's request for costs.

Applying these deductions, the Court rules that Diaz is entitled to recover costs in the amount of $9,434.74.

## III. CONCLUSION

For the reasons enumerated above, the Court ALLOWS Diaz's Motion for Attorney's Fees and Costs, ECF No. 131.  Jiten shall compensate Diaz in the amount of $25,000 for reasonable attorney's fees and $9,434.74 for the costs of litigation.

SO ORDERED.

                              /s/ William G. Young
                             William G. Young
                             District Judge