# United States Court of Appeals
## For the First Circuit

---

Nos. 11-1505, 11-1575

CARMEN LLERENA DIAZ,

Plaintiff, Appellee,

v.

JITEN HOTEL MANAGEMENT, INC.,

Defendant, Appellant.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

---

Before

Boudin, Stahl, and Thompson, Circuit Judges.

---

Ryan C. Siden, Siden & Associates, P.C., for appellant.
Lynn A. Leonard, for appellee.

---

February 7, 2012

---

**STAHL**, <u>Circuit Judge</u>.  A jury rendered a verdict in favor of plaintiff-appellee Carmen Llerena Diaz (Diaz) in this age discrimination action.  On appeal, defendant-appellant Jiten Hotel Management, Inc. (Jiten) challenges the district court's jury instructions and the court's denial of Jiten's motion to certify a question of state law to the Massachusetts Supreme Judicial Court (SJC).  We affirm.

## I.  Facts & Background

We recite the facts in the light most favorable to the jury's verdict.  <u>See, e.g.</u>, <u>Sony BMG Music Entm't</u> v. <u>Tenenbaum</u>, 660 F.3d 487, 491 (1st Cir. 2011).  Diaz began working for the hotel property located at 69 Boston Street in Dorchester, Massachusetts in 1985.  During the early years of Diaz's employment, the hotel was known as the Howard Johnson Hotel and then as the South Bay Hotel.  In 1997, Jiten purchased the hotel and operated it as a Holiday Inn Express (HIE).  Jiten employed Diaz as the HIE's executive housekeeper, meaning that Diaz oversaw the housekeeping staff in a managerial role.  She worked under Mitesh "Mitch" Patel (Patel), the general manager of the HIE.

Though Diaz and Patel seem to have worked well together for several years, their relationship began to deteriorate in 2003.  According to Diaz, Patel became "mean" and "arrogant."  He began embarrassing Diaz in front of her co-workers, screaming at her for seemingly insignificant reasons, and unfairly scrutinizing her

work. Diaz attributes the change in Patel's behavior to her age, claiming that Patel made a variety of ageist comments to her, including telling her that she looked like an "old pumpkin," an "old hankie," and "old shoes." When Diaz changed her hairstyle, Patel said that the new hairdo made her "look younger." When she hired a housekeeper who was in her fifties, Patel said, "You['re] going to convert this hotel into a nursing home." In 2004 and 2005, Patel told Diaz that she was "getting old" and asked when she was going to retire. Patel apparently made similar comments about another senior employee, whom Patel referred to as "old man."

Jiten also stopped giving Diaz annual evaluations and raises in 2004, despite the fact that it was company policy to perform an annual evaluation for each employee. In 2004, Diaz asked Patel whether she would be receiving a raise, and he responded that he would "do it later" or get to it "one of these days" and that Diaz should not worry. She never received the raise. In 2005, Diaz again inquired as to whether she would receive a raise for that year. Patel allegedly responded, "Carmen, you [are] making too much money, be grateful that you have a job."

Diaz eventually reported Patel's behavior to Jiten's corporate headquarters. Jiten's vice president met with Diaz and Patel but did not take any disciplinary action against Patel. A few days after the meeting, the vice president sent Diaz a flower arrangement.

Though Patel's brother, Chet Patel, apparently replaced Patel as general manager of the HIE in September 2005,[1] Diaz claims that Patel remained a presence at the hotel.  She also claims that Patel's behavior had a trickle-down effect, causing other employees to discriminate against her, even after Patel left.  For example, a woman who worked in the laundry room of the HIE from 2005 until October 2006 testified that other employees of the hotel referred to Diaz as "the old woman" and "an old lady."  In June 2006, Diaz overheard the HIE sales manager saying that Jiten wanted to fire Diaz because she was "too old" and that Diaz had requested a raise but the hotel did not want to give it to her.

Perhaps most importantly for purposes of this appeal, in April 2006, Diaz wrote to Chet Patel requesting an evaluation and a raise for 2006, as well as an explanation as to why she had not received evaluations or raises in 2004 and 2005.  Chet Patel did not respond to the letter, and Diaz did not receive an annual evaluation or a raise in 2006.  At trial, Chet Patel admitted that Jiten's failure to provide evaluations for Diaz in 2004, 2005, and 2006 was contrary to company policy.  As for the fact that Diaz had

---

[1] Chet Patel testified at trial that he took over as general manager in September 2005 and that Mitch Patel had left the hotel prior to that date to work at a Courtyard Marriott that Jiten also managed.  Confusing the issue as to who was in charge at the HIE in 2006, Mitch Patel's testimony at trial was that he was transferred to the Courtyard Marriott in July 2006, though he also stated that he was not involved in evaluating employees for raises at the HIE in 2006.

not received raises during those same years, Jiten's vice president testified that the company had been experiencing financial difficulties and that Diaz's salary had maxed out after twenty-one years. However, Diaz introduced evidence that all of the other members of the management team, who were younger than she was, received an evaluation and a raise at some point between 2004 and 2006. She also introduced evidence that six members of the management team specifically received raises in 2006.

Jiten terminated Diaz in August 2006. After filing a complaint with the Equal Employment Opportunity Commission and the Massachusetts Commission Against Discrimination (MCAD), Diaz brought the instant age discrimination action against Jiten in federal court. She included claims under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-624, and the Massachusetts anti-discrimination statute, Mass. Gen. Laws ch. 151B, § 4 (Chapter 151B), alleging a hostile work environment and disparate treatment.[2] The case proceeded to trial.

At the district court's request, the parties briefed the question of whether the court should issue a mixed-motive jury instruction (described at more length below) with respect to Diaz's disparate treatment claims under the ADEA and Chapter 151B. The

---

[2] Diaz also brought claims against Jiten for intentional infliction of emotional distress (IIED), wrongful termination, and defamation. Diaz voluntarily dismissed her defamation and wrongful termination claims, and the district court granted summary judgment for Jiten on the IIED claim, a decision that Diaz did not appeal.

court ultimately issued a mixed-motive instruction on the Chapter 151B disparate treatment claim but not on the ADEA claim. Jiten requested an instruction on Chapter 151B's statute of limitations, which the district court did not issue.

In April 2011, the jury rendered a verdict in favor of Diaz only on her state law discrimination claim and awarded her $7,650.00 in compensatory damages.[3] Jiten filed a motion to alter or set aside the judgment and/or to certify to the SJC the question of whether the mixed-motive instruction was proper under state law. The district court denied Jiten's motion. This appeal followed.

## II. Discussion

Jiten argues that the district court erred by: (1) issuing the mixed-motive instruction; (2) refusing to certify the mixed-motive question to the SJC; and (3) failing to issue the Chapter 151B statute of limitations instruction. Before turning to those claims, we pause for a moment to note that neither Jiten's opening brief nor its reply brief addresses what standard of review applies in this case, in violation of Federal Rule of Appellate Procedure 28(a)(9)(B). In any event, Jiten's appeal fails on the merits.

---

[3] The verdict form did not require the jury to specify whether they were finding for Diaz with regard to her state law disparate treatment claim, her state law hostile work environment claim, or both.

A. The mixed-motive instruction

### 1. The instruction

We review Jiten's preserved challenge to the district court's mixed-motive jury instruction de novo, though we will reverse only if we find that the court committed an error that was "prejudicial based on a review of the record as a whole." Sony BMG Music Entm't, 660 F.3d at 503 (quoting Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 72 (1st Cir. 2009)).

To put Jiten's challenge to the district court's mixed-motive instruction in context, we begin with a brief overview of the current status of the mixed-motive framework under state and federal law. A "mixed-motive" case is one in which "an employee alleges that [s]he suffered an adverse employment action because of both permissible and impermissible considerations." Gross v. FBL Fin. Servs., Inc., 129 S. Ct. 2343, 2347 (2009). Once a plaintiff in a mixed-motive case establishes that her membership in a protected class was a motivating factor for an employment action, the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision regardless of the impermissible consideration. See Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003); Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).

Price Waterhouse, which established the mixed-motive burden-shifting analysis, was a Title VII case. The Supreme Court

recently held, in Gross, that the mixed-motive framework does not extend to ADEA cases, because "[u]nlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor." 129 S. Ct. at 2349. Thus, Diaz was not entitled to (and did not receive) a mixed-motive instruction with regard to her ADEA disparate treatment claim. Rather, under federal law, she was required to "prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." Id. at 2352.

Under Massachusetts law, however, the mixed-motive analysis survives in age discrimination cases, at least for the time being. In construing Chapter 151B, the Massachusetts SJC has sometimes looked to federal case law for guidance, see Wynn & Wynn, P.C. v. Mass. Comm'n Against Discrimination, 729 N.E.2d 1068, 1080 n.29 (Mass. 2000), overruled on other grounds by Stonehill Coll. v. Mass. Comm'n Against Discrimination, 808 N.E.2d 205 (Mass. 2004), but the SJC "frequently do[es] not follow the reasoning of Federal appellate decisions applying Title VII," Cuddyer v. Stop & Shop Supermarket Co., 750 N.E.2d 928, 939 (Mass. 2001). In Wynn & Wynn, the SJC did choose to adopt Price Waterhouse's burden-shifting analysis and apply it to all actions under Chapter 151B "in which the plaintiff, armed with some strong (direct) evidence of discriminatory bias, demonstrates that at least one factor

motivating the employer's decision is illegitimate." 729 N.E.2d at 1078. Though Wynn & Wynn was a gender discrimination case, Jiten does not argue that the SJC limited the applicability of the mixed-motive framework to gender discrimination cases. Indeed, the broad language of the Wynn & Wynn opinion does not seem to support such an argument. See id. at 1079-81.

After the Supreme Court decided Gross, the SJC reexamined the validity of the mixed-motive framework under state law in Haddad v. Wal-Mart Stores, Inc., 914 N.E.2d 59 (Mass. 2009). Although the SJC recognized that the mixed-motive analysis had "generated considerable controversy and criticism and resulted in splits in the United States Courts of Appeals," id. at 77 n.27, the SJC nonetheless affirmed the lower court's issuance of a mixed-motive instruction, id. at 76-78. The SJC said the following about the status of the mixed-motive analysis under state law post-Gross:

> In Gross v. FBL Fin. Servs., Inc., . . . citing ongoing difficulties in applying the mixed motive analysis in any context, and the absence of a mixed motive requirement in the Federal statute on age discrimination in employment, the United States Supreme Court determined that a mixed motive analysis is not permitted in age discrimination cases. We do not consider today whether we will retain a mixed motive analysis under Massachusetts law.

Id. at 77 n.27. Though Haddad was a gender discrimination case, the opinion did not distinguish between state law gender and age discrimination cases, nor did it suggest that the reasoning in Gross might apply to state law age discrimination cases. Rather,

-9-

as we read the opinion, the SJC implicitly affirmed the ongoing validity of the mixed-motive framework in <u>all</u> Chapter 151B cases, though it left open the possibility that Massachusetts might not retain that framework indefinitely.  <u>See</u> <u>id.</u>

Because the SJC said, in <u>Wynn & Wynn</u>, that it would "follow the guidance of the United States Supreme Court with respect to the allocation of burdens of proof in mixed-motive cases," 729 N.E.2d at 1080, Jiten's brief argues that "it is reasonable to conclude that the SJC would reject a mixed-motive analysis in the context of age discrimination."  But the SJC clearly did <u>not</u> reject the mixed-motive analysis in <u>Haddad</u>, and <u>Wynn & Wynn</u> thus remained good law at the time that the district court instructed the jury in this case.

Furthermore, Jiten reads too much into the SJC's statement in <u>Wynn & Wynn</u>.  While the SJC did choose to adopt the <u>Price Waterhouse</u> mixed-motive burden-shifting analysis, that did not mean that the SJC was somehow bound by the Supreme Court's later decision in <u>Gross</u>.  The SJC has made clear that it routinely does not follow federal law in interpreting Chapter 151B.  That is true for a number of reasons, including "the existence of material differences between [the Massachusetts] statutory scheme and the Federal scheme" and "the legislative directive that G.L. c. 151B is to be applied liberally."  <u>Cuddyer</u>, 750 N.E.2d at 939; <u>see also</u> <u>id.</u> at 939-40 (citing cases in which the SJC has construed Chapter 151B

differently than the federal courts have construed Title VII). Hence, in Haddad, the SJC did not adopt Gross's reasoning, instead leaving for another day the question of "whether we will retain a mixed motive analysis under Massachusetts law." 914 N.E.2d at 77 n.27.

Finally, we note that, from a statutory perspective, it makes sense that the mixed-motive framework might apply to state age discrimination claims but not to federal age discrimination claims. There is just one Massachusetts statute that outlaws both age and gender discrimination (Chapter 151B), whereas two separate statutes outlaw age and gender discrimination in the federal context (the ADEA and Title VII). The Supreme Court's conclusion in Gross that the mixed-motive framework did not extend to ADEA claims was premised on the fact that "Title VII is materially different [from the ADEA] with respect to the relevant burden of persuasion." Gross, 129 S. Ct. at 2348. That is not the case in the state context.

Thus, for purposes of Diaz's state law age discrimination claim, Wynn & Wynn controlled at the time the district court instructed the jury, and we find no error in the court's decision to issue the mixed-motive instruction. See, e.g., Phoung Luc v. Wyndham Mgmt. Corp., 496 F.3d 85, 88 (1st Cir. 2007) (a federal court applying state law "will not create new rules or significantly expand existing rules").

### 2. Certification to the SJC

Jiten separately challenges the mixed-motive instruction by arguing that the district court should have certified the question to the SJC, an argument that Jiten made below as part of a motion to alter or set aside the judgment. See Fed. R. Civ. P. 59(e), 60(b). Our standard of review here is for abuse of discretion. See Negrón-Almeda v. Santiago, 528 F.3d 15, 25 (1st Cir. 2008) (abuse of discretion review applies to the denial of a motion to alter or amend the judgment); Muñiz v. Rovira-Martinó, 453 F.3d 10, 12 (1st Cir. 2006) (same for a motion to set aside the judgment); U.S. Steel v. M. DeMatteo Const. Co., 315 F.3d 43, 53 (1st Cir. 2002) (same for the district court's decision not to certify a question of law to the SJC).

A federal court may, in its discretion, certify to the SJC a question of Massachusetts law that is "determinative of the cause then pending in the certifying court" and as to which "it appears to the certifying court there is no controlling precedent in the decisions of [the SJC]." Mass. S.J.C.R. 1:03; see also In re Hundley, 603 F.3d 95, 98 (1st Cir. 2010). For the reasons discussed above, this was not an instance in which there was no controlling precedent. In Wynn & Wynn, the SJC established that the mixed-motive framework applies in Chapter 151B cases, and in Haddad, the SJC implicitly affirmed the framework's ongoing

validity under Massachusetts law.  The district court did not abuse its discretion in declining to certify the question to the SJC.

**B.  The statute of limitations instruction**

Finally, Jiten argues that the district court improperly failed to instruct the jury on the 300-day statute of limitations under Chapter 151B.  See Mass. Gen. Laws ch. 151B, § 5.  Diaz argues that Jiten did not adequately object to the court's failure to provide the instruction at trial and that we should therefore review for plain error.[4]  See, e.g., Sony BMG Music Entm't, 660 F.3d at 503.  Because we find that the standard of review does not

---

[4] Jiten proposed a jury instruction on the Chapter 151B statute of limitations in writing before trial.  Immediately after the close of the evidence, the district court held a jury charge conference, during which Jiten did not mention the statute of limitations instruction.  Several days later, the district court instructed the jury.  During a sidebar conference that followed the instructions, Jiten stated, "there's been no instruction on the statute of limitations."  The court asked Jiten why such an instruction was necessary, and Jiten replied that Diaz had not "made any claim" that a discriminatory act occurred specifically within the 300-day period before she filed with the MCAD in August 2006.  The district court responded that it was undisputed that Diaz was denied a raise in 2006 -- a potentially discriminatory act that fell within the statute of limitations -- and declined to give the instruction.  Jiten then said nothing, dropping the issue without objecting on the record or attempting to explain why the instruction was in fact necessary (despite the court's clear directive during the jury charge conference that any objections to the court's instructions had be "specific").  We have serious doubts as to whether Jiten's request constituted an objection "stating distinctly the matter objected to and the grounds for the objection," as required by Federal Rule of Civil Procedure 51(c)(1).  See, e.g., Linn v. Andover Newton Theological Sch., Inc., 874 F.2d 1, 5 (1st Cir. 1989) ("If there is a problem with the instructions, the judge must be told precisely what the problem is, and as importantly, what the attorney would consider a satisfactory cure.") (emphasis in original).

alter the outcome, we will assume for the sake of argument that Jiten properly preserved the objection and review the claim de novo. Id. We need not address whether the district court committed an error under Massachusetts law by failing to instruct the jury on the applicable statute of limitations. Even assuming that the court erred by omitting the instruction, Jiten has not convinced us that the error was "prejudicial based on a review of the record as a whole." Id. (quoting Mass. Eye & Ear Infirmary, 552 F.3d at 72).

Under Massachusetts law, where a plaintiff alleges a pattern of discriminatory conduct, as Diaz did here, the continuing violation doctrine applies. Pelletier v. Town of Somerset, 939 N.E.2d 717, 731 (Mass. 2010). "That doctrine permits a person to seek damages for alleged discrimination occurring outside the usual statute of limitations period if the alleged events are part of an ongoing pattern of discrimination, and there is a discrete violation within the statute of limitations period to anchor the earlier claims." Id. Diaz filed with the MCAD on August 7, 2006. Thus, in order to recover for discriminatory acts that occurred outside of the statute of limitations period, she needed to demonstrate that: (1) at least one discriminatory act occurred no more than 300 days before August 7, 2006 (that is to say, on or after October 11, 2005); (2) the alleged timely act or acts had a substantial relationship to the alleged untimely act or acts; and

-14-

(3) any discriminatory acts that occurred outside of the statute of limitations period did not trigger Diaz's awareness and duty to assert her rights. See, e.g., Windross v. Barton Protective Servs., Inc., 586 F.3d 98, 103 (1st Cir. 2009).[5]

Jiten only raises the first prong of the continuing violation test on appeal, arguing that the jury "did not find at least one discriminatory act that took place after October 11, 2005" and thus that the district court's failure to provide the instruction was prejudicial. Jiten premises its argument on an assumption that "[t]he only reasonable reading of the jury's [$7,650.00] verdict is that it awarded Ms. Diaz seven percent (7%) raises for the years 2004 and 2005, when Mitch Patel was her supervisor," and thus that "the last discriminatory act accepted by the jury was the denial of Ms. Diaz's raise in April of 2005, six months too distant in time to support a claim of continuing violation."

However, the verdict form did not require the jury to specify how it was allocating damages between Diaz's disparate treatment claim and her hostile work environment claim, nor did it ask the jury to differentiate between damages related to lost wages and those related to emotional distress. Jiten's claims are thus

---

[5] Even if Diaz failed to make that showing, she could still use events that occurred prior to October 11, 2005 as background evidence of a hostile work environment, though she could not recover damages for those time-barred events. Pelletier, 939 N.E.2d at 731 n.33.

purely speculative and draw "too many conclusions from the jury's verdict." Crowley v. L.L. Bean, Inc., 303 F.3d 387, 396 (1st Cir. 2002). Furthermore, as the district court noted in rejecting the proposed instruction, Jiten admitted that Diaz was denied a raise in May 2006, which the jury reasonably could have concluded was a discriminatory act and which fell well within the 300-day statutory period. See Pelletier, 939 N.E.2d at 731.

Thus, even if the district court erred by omitting the statute of limitations instruction, that error was not prejudicial, and reversal is not warranted. Sony BMG Music Entm't, 660 F.3d at 503.[6]

### III. Conclusion

For the foregoing reasons, we affirm and award costs to Diaz.

---

[6] Jiten also raised this statute of limitations argument as part of its motion to alter or set aside the judgment. See Fed. R. Civ. P. 59(e), 60(b). Because there was no prejudicial error requiring reversal, the district court did not abuse its discretion by denying Jiten's motion. See Negrón-Almeda, 528 F.3d at 25; Muñiz, 453 F.3d at 12.